# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BRYAN D. WHEAT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-368-PJC |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Bryan D. Wheat ("Wheat"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Wheat appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Wheat was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Plaintiff's Background

Plaintiff was born on July 3, 1962, and was 45 years old at the time of the ALJ's decision. (R.26). He completed high school and a semester of college. *Id.* Wheat worked as a welder and rotor assembler for an oil company. (R. 27). Claimant alleges an inability to work beginning March 30, 2001, due to injuries he sustained when struck at work by 35 tons of pressure press in the chest and abdomen. (R. 27-28, 137). He also claims to suffer from chronic

fatigue, swollen feet and abdomen, anxiety, hypertension, hyperlipidemia, right knee strain, bursitis of the shoulders, and bowel problems. (R.29, 37, 38).

On March 30, 2001, Wheat was taken to the Emergency Room of University Hospital in Oklahoma City, Oklahoma after being struck at work by 35 tons of pressure press in the chest. (R. 137). He presented with evidence of cardiac and liver contusions and underwent surgery for liver laceration and hepatic artery transection. (R.137,149, 155). He underwent several subsequent surgeries for exploratory laparotomy, washing out and repacking the liver laceration, and central venous catheter placement before he was discharged on April 23, 2001 with a prescribed medication protocol and referral for continued rehabilitation. (R.139-146, 149, 155).

On March 28, 2002, Wheat was hospitalized for a biliary obstruction and underwent surgery on April 2, 2002 for an exploratory laparotomy, hepaticojejunostomy with Roux-en-Y reconstruction. (R. 160-168). Wheat returned to the hospital ten times over the next fifteen months to exchange the left biliary drainage catheter until it was removed on June 24, 2003. (R. 176-192).

On October 13, 2005, Wheat was referred to gastroenterologist Gopi Vasudevan, M.D. ("Vasudevan"), by his surgeon Larry R. Pennington, M.D.("Pennington"), for a colonoscopy and Doppler studies of his liver. (R. 219, 242-243). Vasudevan found left-sided, moderate diverticulosis in the sigmoid colon, internal and external hemorrhoids, "prolonged, very redundant and convoluted colon from the sigmoid colon to the hepatic flexure" and normal hepatic and portal venous Doppler analysis with no acute abnormalities. (R. 219, 242).

On February 20, 2006, Wheat underwent a consultative examination by Angelo Dalessandro, D.O. ("Dalessandro"). (R. 193-200). Dalessandro noted that Wheat complained of

abdominal bloating with pain and difficulty sitting because of the aggravation of the abdominal pain, chronic fatigue, low back pain, numbness on the lateral side of his left thigh and in his abdominal area, swelling in both feet, shoulder pain, nervousness, depression and difficulty sleeping. (R. 193-194). Dalessandro observed a generalized abdominal tenderness on palpation with a slight increase in peristalsis, tenderness in both anterior shoulder joints with a decrease in the range of motion, tenderness on palpation of the lateral left thigh area and on the medial and lateral aspect of the right knee. (R. 194-195). He diagnosed Wheat with post status multiple abdominal trauma, glaucoma, chronic lumbodorsal strain, chronic right knee strain, and suggested that chronic bursitis in both shoulders be ruled out. (R. 195). Dalessandro measured bilateral shoulder abduction and forward elevation at 90 out of 150 degrees, left shoulder internal and external rotation at 60 out of 80 and 50 out of 90, respectively, and right shoulder internal and external rotation at 50 out of 80 and 40 out of 90, respectively. (R. 198).

On June 6, 2006, Wheat was seen by Tony A. Little, D.O. ("Little") for a routine follow-up. (R. 214-215). Little noted that Wheat's abdomen was soft and nontender to palpation and although his Gamma-glutamyl transferase ("GGT") had been chronically elevated since his liver injury, his transaminases were normal. (R. 215).

Wheat returned to Little on November 7, 2006 for a follow-up. (R. 212-213). Little recommended that Wheat's blood sugar and liver functions continue to be monitored and although Wheat had hyperlipidemia, Little was reluctant to place Wheat on a statin due to his history of elevated liver functions. (R. 212).

Wheat testified that he underwent twelve surgeries since the March 30, 2001 accident - two hernia repairs and ten liver surgeries. (R. 28). Since the last surgery he has continued to

3

suffer from chronic fatigue that overcomes him suddenly during exertion, forcing him to sit down, constant abdominal spasms and pain he rates as 6-7 on a scale of 10, feet swelling, abdominal swelling that inhibits bending and stooping, and bowel problems. (R. 28-33, 37-38). Although he was prescribed Lortab for his pain, he stopped taking it because it dulled his senses and relies on extra strength Tylenol. (R. 33-34).

Wheat testified that his abdominal pain and swelling caused problems with sleeping and sitting and caused numbness in his left buttock and leg and arms. (R. 34-35). He grocery shops only at night because of his anxiety and paranoia. (R. 37). Further, because of his abdominal injuries and repairs, he has trouble with his bowels which creates more anxiety about being in public places. (R. 38)

Wheat's mother, Sara Jane Wheat ("Ms. Wheat"), testified that she observed her son on a daily basis as he lives with her and although his stomach is flat when he first awakes, after being up for a while, he looks like he's pregnant and has to undo his pants due to the abdominal swelling. (R. 42).

## Procedural History

On September 19, 2005, Wheat protectively applied for disability benefits under Title II (42 U.S.C. § 401 et seq.), and for Supplemental Security Income benefits under Title XVI (42 U.S.C. § 1381 et seq.). (R. 77-85). Wheat's application for disability benefits was denied in its entirety initially and on reconsideration. (R. 46-47). A hearing before ALJ Lantz McClain was held on November 13, 2007, in Tulsa, Oklahoma. (R.23-45). By decision dated January 31, 2008, the ALJ found that Wheat was disabled from March 30, 2001 through June 24, 2003 but not disabled from June 25, 2003 through the date of the decision. (R. 12-22). On April 9, 2010,

the Appeals Council denied review of the ALJ's findings. (R. 1-6). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §423(d)(1)(A). A claimant is disabled under the Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). In a termination review, a "medical improvement" standard applies and an eight-part sequential evaluation process is used. See 20 C.F.R. § 404.1594(f)(1) through (8).[1] The Commissioner bears the burden of showing medical improvement by establishing that the

---

[1] The first determination is whether the claimant is engaged in substantial gainful activity; if so, benefits will be terminated. 20 C.F.R. §404.1594(f)(1). If not, the second step is to determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments; if so, benefits will not be terminated. 20 C.F.R. §404.1594(f)(2). If not, at Step Three the Commissioner must determine whether there has been a medical improvement; if not, and if none of the exceptions to the standard apply, then benefits will not be terminated. 20 C.F.R. §404.1594(f)(3). If there has been medical improvement, Step Four requires an evaluation as to whether the improvement relates to the claimant's ability to work; if not, and if none of the exceptions to the standard apply, then benefits will not be terminated. 20 C.F.R. §404.1594(f)(4) and (5). If there has been no medical improvement or if any medical improvement is unrelated to the claimant's ability to work, and if none of the exceptions apply, benefits will be continued. *Id*. If there has been a medical improvement related to the claimant's ability to work and if none of the exceptions apply, then at Step Six, the Commissioner evaluates all of the claimant's impairments to determine if they are severe; if not, benefits will be terminated. 20 C.F.R. §404.1594(f)(6). If the claimant has a severe impairment or combination of impairments, at Step Seven, the Commissioner must determine whether the claimant can perform past relevant work; if so, benefits will be terminated. 20 C.F.R. §404.1594(f)(7). However, if the claimant cannot return to prior relevant work, a determination will be made at Step Eight as to whether he can perform other substantial gainful activity. 20 C.F.R. §404.1594(f)(8).

claimant's medical condition has improved, the improvement is related to the claimant's ability to work, and the claimant is currently able to engage in substantial gainful activity. *Glenn v. Shalala*, 21 F.3d 984, 987 (10th Cir. 1994). In deciding whether to terminate benefits, a claimant's impairments are considered together. See 20 C.F.R. § 404.1594(d). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Brown*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id. (quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Wheat was disabled from March 30, 2001, the date of his injury, to June 24, 2003. (R. 17). However, medical improvement occurred as of June 25, 2003, thereby ending his disability. (R. 18-19). The ALJ found that from June 25, 2003 through the date of the decision, Wheat had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and

10 pounds frequently, stand and/or walk at least 6 hours in an 8-hour day, sit at least 6 hours in an 8-hour day, but should avoid work above shoulder level. (R. 19-20). The ALJ determined that claimant could not perform his past relevant work, but there were other jobs existing in significant numbers in the national and regional economies that he could perform, based on his RFC, age, education, and work experience. (R. 21).

**Review**

Wheat asserts as error that the ALJ failed: (1) to demonstrate that there are jobs available at Step Eight;[2] (2) to demonstrate what medical improvement occurred that is related to his ability to work; and (3) to perform a proper credibility determination.

Wheat complains that the Commissioner failed his burden at Step Eight to show there is a significant number of jobs available in the national economy that Wheat could perform given his RFC, age, education and past work experience. Specifically, Wheat contends that the ALJ erred in relying on the Vocational Expert ("VE") Cheryl Mallon's ("Mallon") testimony identifying light, unskilled jobs such as press machine operator and office cleaner that Wheat could perform. (R. 42-43). Wheat complains that the VE did not identify the *Dictionary of Occupational Titles*' ("DOT") codes for either occupation and points out that the job of Press-Machine Operator, DOT # 590.665-014, is defined as medium, unskilled work, and Janitor (any industry), DOT #382.664-010, is defined as medium, semi-skilled work. As neither of these occupations meets the ALJ's RFC finding that Wheat can perform a "range of light work activity," avoiding work above shoulder level, the ALJ erred at this Step. (R. 19).

---

[2]  Claimant and the Commissioner refer to this step as Step Five. However, as the decision was based in part on medical improvement, it is actually Step Eight.

The Commissioner responds that there are five jobs in the DOT that match the descriptions provided by the VE: Cleaner, Housekeeper (DOT 323.687-014); Puff Ironer (DOT 363.687-018); Shaper and Presser (DOT 583.685-102); Press Operator (DOT 363.687-010) and Hydraulic-Press Operator (DOT 583.685-054). Wheat counters that the jobs identified by the Commissioner constitute *post hoc* justification as they were not identified by the VE.

Wheat further contends that these job require frequent or constant reaching, and substantial evidence establishes that a proper hypothetical should have included limitations in reaching in all directions. The Commissioner asserts that the medical evidence establishes only that Wheat could not reach overhead, which is what the ALJ properly found and presented in his hypothetical to the VE.

The ALJ bears the burden to show that there are jobs in the regional or national economies that Wheat can perform with the limitations the ALJ has found. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). "When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704 at *4. The ALJ must ask the VE if the vocational evidence conflicts with the DOT and if there appears to be a conflict, the ALJ must obtain a reasonable explanation for the apparent conflict. *Id*; *Haddock*, 196 F.3d at 1091 n. 2 ("[T]he ALJ has the burden to investigate whether a vocational expert's opinion conflicts with information provided in the Dictionary of Occupational Titles, and elicit an explanation for any inconsistency.").

The following relevant colloquy between the ALJ and VE occurred at the hearing:

Q. I'm going to give you some hypothetical questions, Ms. Mallon. Assume we have an individual who's the same age, education, and vocational history of this claimant.

8

> Who's limited to light work, as described by the Commissioner, that is, occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk at least 6 hours out of an 8 hour workday, sit at least six hours out of an 8 hour workday. The individual also needs to avoid work about shoulder level. That would eliminate his past work?
> A. Yes.
> Q. Does it leave other jobs in the regional or national economy in significant numbers and, if so, can you give me some representative examples?
> A. There's light, unskilled press machine operator. There's 149,000 of those in the nation and 18,000 in this region of Texas, Oklahoma, Arkansas, and Louisiana. Light office cleaning. There's 189,000 in the nation and 23,000 in the region.

(R. 42-43).

The ALJ relied on this testimony by the VE in his Step Eight finding:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: press machine operator, described as light in exertion and unskilled work, with 18,000 such jobs in the region and 149,000 nationally; and office cleaner, described as light in exertion and unskilled work, with 13,000 such jobs in the region and 107,000 nationally. Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(R. 21).

The Court finds that the Commissioner has not met his burden at Step Eight. While the Commissioner argues that the DOT lists "several jobs that are consistent with the vocational expert's response to the ALJ's hypothetical question," citing Cleaner, Housekeeper (DOT 323.687-014); Puff Ironer (DOT 363.687-018); Shaper and Presser (DOT 583.685-102); Press Operator (DOT 363.687-010) and Hydraulic-Press Operator (DOT 583.685-054), it is not the Court's job to speculate as to whether these are the press machine operator and office cleaner jobs (and numbers of jobs) that the VE identified and the ALJ relied upon and not the Press-Machine Operator, DOT # 590.665-014 and Janitor (any industry), DOT #382.664-010 jobs Wheat cites as not matching the RFC limitations found by the ALJ. "Determining 'the functional demands and job duties' of specific jobs and

matching those requirements to a claimant's limitations is the very task the ALJ must undertake ." *Haddock*, 196 F.3d at 1090.

Although the ALJ stated that Mallon's testimony regarding jobs Wheat could perform was consistent with the information contained in the DOT, at no point during the hearing did the ALJ ask nor did the VE testify whether her testimony was consistent with information in the DOT. Thus, the ALJ further erred in failing to inquire as to whether the VE's testimony regarding Wheat's ability to perform the jobs of press machine operator and office cleaner corresponded with the information in the DOT. *Id*. If he had, the ALJ would likely have elicited sufficient information to resolve the uncertainty surrounding the identified jobs and address any discrepancy. In any case, the VE's testimony was brief and lacking in helpful description of these jobs and Wheat has raised legitimate questions regarding discrepancies between the VE's testimony and the DOT.

In sum, the Court finds that the ALJ failed to make a proper inquiry of the VE and the VE's testimony does not constitute substantial evidence to support the ALJ's finding at Step Eight.

Since remand in this instance will require another hearing, the ALJ should also seek clarification from Dr. Dalessandro regarding his findings on Wheat's reaching limitations.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **REVERSED AND REMANDED**..

DATED this 17th day of August, 2011.

Paul J. Cleary
United States Magistrate Judge